Vargas De Leon Ortiz v. Lynch

BIA
Owens, IJ
A024 029 154

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand sixteen.

PRESENT:
> GUIDO CALABRESI,
> GERARD E. LYNCH,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

ARGENTINA VARGAS DE LEON ORTIZ,
a/k/a ARGENTINA ORTIZ

    *Petitioner*,

    v.                        No. 14-4641

LORETTA E. LYNCH, United States Attorney General,

    *Respondent*.

_____

FOR PETITIONER:        Michael E. Marszalkowski, Esq., Buffalo, NY.

FOR RESPONDENT:      JENNIFER R. KHOURI (Benjamin C. Mizer, Shelley R. Goad, Jennifer P. Levings, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Argentina Vargas de Leon Ortiz ("Vargas"), a native and citizen of the Dominican Republic, seeks review of a November 18, 2014, decision of the BIA affirming an October 31, 2012, decision of an Immigration Judge ("IJ") pretermitting her application for relief under former Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (1994) ("212(c) relief"). In re Argentina Vargas de Leon Ortiz, No. A024 029 154 (B.I.A. Nov. 18, 2014), aff'g No. A024 029 154 (Immig. Ct. Buffalo Oct. 31, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Prior to April 24, 1996, 212(c) relief was available to any lawful permanent resident ("LPR"), subject to conditions and exceptions not relevant here, who had been convicted of an aggravated felony but had not served five years' imprisonment. See Pub. L. No. 101-649, § 511. On April 24, 1996, all LPRs convicted of an aggravated felony were barred from 212(c) relief, regardless of the term of imprisonment. See Pub. L. No. 104-132, § 440(d). On April 1, 1997, 212(c) relief was eliminated altogether. See Pub. L. No. 104-208, Div. C., § 304(b).

In 2001, the Supreme Court held that 212(c) relief remains available to aliens who pleaded guilty to removable offenses when such relief existed, even if they were not placed in removal proceedings until after its elimination. INS v. St. Cyr, 533 U.S. 289 (2001).

2

The Court concluded that aliens who entered guilty pleas in possible reliance on the existence of 212(c) relief could not later be deprived of the opportunity to seek such relief. In the wake of St. Cyr, the Executive Office for Immigration Review, Department of Justice, promulgated a regulation providing that an alien who pled guilty to an aggravated felony remains eligible for 212(c) relief without regard to the later restriction or repeal of that provision if "the alien's plea agreement was made before April 24, 1996," and that "the date of the plea agreement will be considered the date the plea agreement was agreed to by the parties." 8 C.F.R. § 1212.3(h). As Vargas was found removable by reason of an aggravated felony for which she did not serve a prison term she would be eligible for 212(c) relief if her plea agreement was "agreed to" or "made" before April 24, 1996. §§ 1212.3(f)(4)(i), (h)(1).

Vargas was arrested and charged with an aggravated felony before April 24, 1996; she eventually entered a guilty plea, but not until November 20, 1996. On a prior appeal, we remanded this matter to the agency to determine the date when Vargas entered a plea agreement with the government. The IJ found, based on an analysis of the docket entries in Vargas's criminal case, that she did not enter a plea agreement until after April 24, 1996. Vargas argues that she is nevertheless eligible for 212(c) relief because she indicated her intention to pursue a plea agreement, and agreed to enter negotiations with the government to that end, prior to April 24, 1996.

Because Vargas is removable based on a conviction for an aggravated felony and controlled substance offense, we lack jurisdiction to review the IJ's factual findings, but retain jurisdiction to review constitutional claims and questions of law, which we review de novo.   8 U.S.C. § 1252(a)(2)(C), (D); Higgins v. Holder, 677 F.3d 97, 100 (2d Cir. 2012).

As we lack jurisdiction over factual findings, we must accept the IJ's finding (which in any event is consistent with the docket entries) that Vargas did not enter a formal plea agreement with the government until after the critical date.   We retain jurisdiction to decide, as a matter of law, whether Vargas's agreement to negotiate regarding a plea agreement constitutes a "plea agreement" within the meaning of the regulation.   We find no legal error in the IJ's conclusion that the parties had not entered into or made a plea agreement by April 24, 1996, notwithstanding discussions that occurred between the parties prior to that date.   A mutual decision to explore a possible disposition of a case is not a "plea agreement."   A plea agreement results from such negotiations when the parties agree on the terms of a plea.   Before that point, neither a defendant's unilateral decision to plead guilty on the best terms offered by the government, nor the parties' mutual decision to explore such terms, constitutes an agreement between the parties that a plea will be entered.   To the extent Vargas argues that St. Cyr requires a different conclusion, we disagree.   A defendant who has undertaken to *consider* the possibility of a guilty plea if appropriate terms can be agreed upon has not committed to enter a plea, and so there is no

4

reason to assume that such a defendant may have detrimentally relied on the existence of any particular provision of the immigration law in ultimately entering a plea agreement. See Vartelas v. Holder, 132 S. Ct. 1479, 1490-91 (2012) ("While the presumption against retroactive application of statutes does not require a showing of detrimental reliance, reasonable reliance has been noted among the familiar considerations animating the presumption") (internal citation and quotation marks omitted). We cannot say that the agency's adoption of the date of the plea agreement represents an unreasonable interpretation of the reasoning or holding of St. Cyr.

Although we find no legal error in the agency's decision in this case, we note that the government may have reason to consider exercising its discretion not to prioritize Vargas's removal. Vargas is a 71 year old woman, who has been a lawful permanent resident of the United States since 1981, more than thirty-five years. She has five living United States citizen children and is the primary caretaker of her youngest son, who has multiple disabilities, resides with Vargas, and is dependent on her for his daily care. Vargas suffers from serious health issues including heart disease, hypothyroidism, diabetes, and high blood pressure. There is no doubt that she committed a serious offense in possessing heroin with intent to distribute. That crime was committed in 1994, more than twenty-one years ago. Even at that time, the sentencing court concluded that under all the facts and circumstances of the case, a prison sentence was not warranted – Vargas

was sentenced to five years' probation, which she successfully completed. Since that time, she has never run afoul of the law.

We fully recognize that considerations of discretion are entirely the prerogative of the executive branch, and we express no opinion on how that prerogative should be exercised in this case. We make these observations only because the relevant governmental authorities may have misperceived the extent of their discretion. At oral argument, the government represented to the court that "prosecutorial discretion also has guidelines that were set forth in [a memorandum issued on November 20, 2014 by Secretary of Homeland Security Jeh Charles Johnson] ("the Johnson Memo"), and one of those very distinct guidelines is that aggravated felons *cannot* be considered for prosecutorial discretion." Oral Argument at 3:05:16 (emphasis added). In fact, however, the Johnson Memo directs the agency to exercise prosecutorial discretion even in the case of noncitizens convicted of aggravated felonies. Specifically, the Johnson Memo directs that "aliens in Priority l," including those convicted of an "aggravated felony," like Vargas,

> must be prioritized for removal . . . *unless*, in the judgment of an ICE Field Office Director, CBP Sector Chief, or CBP Director of Field Operations, there are compelling and exceptional factors that clearly indicate the alien is not a threat to national security, border security, or public safety and should not therefore be an enforcement priority. . . .
>
> In making such judgments, DHS personnel should consider factors such as: extenuating circumstances involving the offense of conviction; extended length of time since the offense of conviction; length of time in the United States; military service; family or community ties in the United States;

status as a victim, witness or plaintiff in civil or criminal proceedings; or compelling humanitarian factors such as poor health, age, pregnancy, a young child, or a seriously ill relative.

Memorandum from Jeh Charles Johnson, Secretary, U.S. Department of Homeland Security, Policies for the Apprehension, Detention and Removal of Undocumented Immigrants, 3, 5-6 (Nov. 20, 2014) (emphasis in original), available at https://www.dhs.gov/sites/default/files/publications/14_1120_memo_prosecutorial_discretion.pdf.  Thus, the governing memorandum to which the government refers appears to leave open the possibility of exercising discretion when considering the removal of a person like Vargas.  Whether to do so is in the hands of the government, but any decision should not be made under a misapprehension of the governing departmental policy.

For the foregoing reasons, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7